In the Matter of BASIC G. INDUSTRIES, INC., Bankrupt.

No. 2531.

United States District Court
S. D. Texas,
Houston Division.

June 2, 1959.

Liddell, Austin, Dawson & Huggins, Jack L. Brandon, Houston, Tex., for petitioner, Longhorn Const. Co.

Elbert Roberts, Houston, Tex., referee in bankruptcy.

H. A. Phillips, Houston, Tex., trustee.

INGRAHAM, District Judge.

The Longhorn Construction Company, hereafter referred to as "Longhorn", has petitioned for review of the referee's order disallowing its claim as a secured claim and allowing the same only as an unsecured claim in the amount of $5,471.01. This order was based upon the referee's finding that a chattel mortgage held by Longhorn on property it had sold to Basic G. Industries, Inc., hereafter referred to as "bankrupt", constituted a voidable preference under the Bankruptcy Act, 11 U.S.C.A. § 1 et seq. Longhorn contends (1) that the referee erred in finding that at the time of execution and delivery of the chattel mortgage Longhorn knew "or had reasons to believe" that bankrupt was insolvent and (2) that the referee erred in disallowing Longhorn's claim as a secured claim because undisputed evidence showed that Longhorn's claim was secured by a valid chattel mortgage duly recorded and the trustee failed to show that such chattel mortgage constituted a voidable preference under the Bankruptcy Act. The trustee has maintained that all the elements of a voidable preference were present in this case and, particularly, that bankrupt was insolvent at the time the chattel mortgage was given and that Longhorn knew, or had reasonable cause to believe, that bankrupt was insolvent at that time.

The pivotal question in this petition is whether Longhorn knew or had reason to believe that the bankrupt was insolvent at the time of execution and delivery of the chattel mortgage. The findings of the referee relevant to this issue are Nos. VI through IX, which state in substance that Longhorn had been pressing bankrupt for payment of a debt past due for several months; that prior to the execution and delivery of the chattel mortgage bankrupt had informed Longhorn that bankrupt was broke; that Longhorn was advised on several occasions that if given time bankrupt believed it could pay its debts; that bankrupt was insolvent at the time of the execution and delivery of the chattel mortgage and that Longhorn had knowledge of such fact, or at least was in possession of such information, as would lead a reasonably prudent man to investigate; and that Longhorn knew, or had reasons to believe, that bankrupt was at said time insolvent and unable to pay its debts. On the basis of these and other findings the referee concluded that the chattel mortgage constituted a voidable preference; that the trustee's contest should be sustained; and that the claim should be denied as a secured claim but allowed as an unsecured claim.

■ On petition for review by a district court the referee's findings and orders should be upheld unless deemed "clearly erroneous". Except in "plain cases", the court should accept the referee's findings. When, as in this case, the orders turn in part upon oral testimony, some deference is due to the judgment of the only branch of the court confronted with the witnesses. See Morris Plan Industrial Bank v. Henderson, 2 Cir., 1942, 131 F.2d 975, and MacLachlan Handbook of the Law of Bankruptcy (1956) at page 430. Findings can be deemed "clearly erroneous" when they are unsupported by substantial evidence, contrary to the clear weight of evidence, or induced by an erroneous view of the law. In the opinion of the court there has been no showing that the findings and orders of the referee are clearly erroneous.

■ The parties are agreed on the legal definition of a voidable preference under Section 60, subs. a and b of the Bankruptcy Act, 11 U.S.C.A. § 96. In order to recover a voidable preference, the trustee must show that there was a transfer of property by the debtor while insolvent, to a creditor on an antecedent debt, the effect of which is to give said creditor a greater percentage of his debt than other creditors of the same class. Said transfer must be made within four months prior to the filing of

the petition in bankruptcy, and *at the time of transfer the creditor receiving the same must know or have reasonable cause to know that the debtor was insolvent at the time.* (Emphasis supplied.)

In any consideration of reasonable cause for belief in a debtor's insolvency under Section 60, sub. b, each case must, to a great extent, be decided on its own facts. While other decisions may be authoritative as to general principles, the determination of the issue quite often requires simply an analysis of the evidence presented in the case at hand. In fact, it is difficult to formulate any well-defined rules to determine the existence of reasonable cause for belief in this situation. Reasonable cause may be found when such a state of facts is brought to a creditor's notice, respecting the affairs and pecuniary condition of the debtor, as would lead a prudent business man to the conclusion that the debtor is insolvent. Likewise, where circumstances are such as would incite a man of ordinary prudence to make inquiry, a creditor is chargeable with notice of facts which a reasonably diligent inquiry would have disclosed. The referee's findings are in accord with these basic principles. See 3 *Collier on Bankruptcy* (Moore's 14th Ed., 1956), Sec. 60.52 et seq.

Cases have been cited and distinguished in the briefs presented to the referee for his decision, which set forth factual situations in which reasonable cause for belief that a debtor is insolvent has not been found. As stated above, these precedents may be authoritative as to general principles, but they cannot be considered conclusive of the inferences that the trier of facts should draw from particular fact situations where substantial evidence exists on both sides of the question. Where substantial evidence supports his decisions, the findings and orders of the referee will be upheld and will not be deemed clearly erroneous.

Substantial evidence in the case at bar does support the referee's findings. The trustee's brief and the transcript of the hearing on objections to Longhorn's claim show that Longhorn had been pressing bankrupt for payment of a debt past due for several months; that Mr. Henderson, an officer of bankrupt, testified that he personally told Mr. Tyler, an officer of Longhorn, that bankrupt was "broke" before the chattel mortgage was executed (Tr. pg. 42); and that Mr. Tyler had information from Mr. Harding, another officer of bankrupt, that would place a reasonably prudent man on inquiry as to the solvency of his debtor. To be more specific, the account was past due; Tyler felt he was going to have to exercise his rights under a prior mechanic's lien against bankrupt. Harding asked to be allowed to make a note and give a mortgage, saying that "he felt like at a somewhat later date that Basic G. would be able financially to pay." This situation continued for about six weeks until Longhorn agreed to take the note and mortgage during which period apparently no investigation was made to determine bankrupt's true financial condition (Tr. pgs. 21 and 22). These facts, as developed in the trustee's brief, are sufficient to support the referee's finding that Longhorn had knowledge of such fact, or at least was in possession of such information, as would lead a reasonably prudent man to investigate and that Longhorn knew, or had reasons to believe, that bankrupt was at this time insolvent and unable to pay its debts. On the basis of these and other findings the referee was justified in concluding that the trustee's contest should be sustained and that the claim should be denied as a secured claim but allowed as an unsecured claim.

The clerk will file this memorandum and furnish true copies hereof to the referee, the trustee, and the attorneys who will draft and submit appropriate order.